

# Fourth Court of Appeals
## San Antonio, Texas

### CONCURRING OPINION

No. 04-19-00080-CV

**IN THE INTEREST OF G.M**, a Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA00686
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice
Concurring Opinion by: Beth Watkins, Justice
Dissenting Opinion by: Rebeca C. Martinez, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Rebeca C. Martinez, Justice
               Beth Watkins, Justice

Delivered and Filed: July 31, 2019

I agree with the dissenting opinion that the evidence in this case is paltry. I join the majority, however, because the standard of review requires affirmance, even based on this scant record. I write separately to express my concern with appellate courts being required to review orders permanently severing constitutionally protected parental rights when, as here, the appellate record is so underdeveloped. I also write to add my voice to the chorus of opinions from this court imploring trial courts and parties to dedicate the time, attention, and resources required to protect the fundamental constitutional relationship between parents and their children.[1]

---

[1] *See, e.g., In re E.F.*, No. 04-18-00635-CV, 2019 WL 2194539, at *7 (Tex. App.—San Antonio May 22, 2019, no pet. h.) (Chapa, J., dissenting) ("Looming deadlines and overcrowded dockets cannot justify shortcuts that undermine the truth-seeking function of our courts."); *In re K.M.J.*, No. 04-18-00728-CV, 2019 WL 1459565, at *1 (Tex. App.—San Antonio Apr. 3, 2019) (mem. op.) ("[W]e cannot say that the 'degree of proof' rose to the level of 'clear and convincing' as required to support the best interest findings."); *In re M.A.S.L.*, No. 04-18-00496-CV, 2018 WL 6624405, at *5 (Tex. App.—San Antonio Dec. 19, 2018, no pet.) (mem. op.) (reversing termination order supported

**Parents Have Constitutional Rights to Raise Their Children**

"One of the most fundamental liberty interests recognized is the interest of parents in the care, control, and custody of their children." *In re N.G.*, No. 18-0508, 2019 WL 2147263, at *3 (Tex. May 17, 2019) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). The involuntary termination of parental rights involves fundamental constitutional rights that are "far more precious than property rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (citing *Stanley v. Illinois*, 405 U.S. 645, 652 (1972)). "A termination decree is complete, final, irrevocable and divests for all time that natural right . . . ." *Id.* Consequently, termination proceedings should be strictly scrutinized with involuntary termination statutes strictly construed in favor of the parent. *Id.* Due process requires meaningful appellate review of orders terminating parental rights. *See Douglas v. California*, 372 U.S. 353, 358 (1963).

"These statements are not mere form language to be included in appellate decisions—they are statements of great constitutional and human dimension." *In re K.C.*, 88 S.W.3d 277, 280 (Tex. App.—San Antonio 2002, pet. denied) (Hardberger, C.J., dissenting). "In terminating parental rights, a trial court must find by clear and convincing evidence that termination is in the

---

by legally and factually insufficient evidence where caseworker had no contact with father, did not meet with father to discuss family service plan, and had "no idea" whether he completed services); *In re R.M.P.*, No. 04-17-00666-CV, 2018 WL 2976451, at *5 (Tex. App.—San Antonio June 13, 2018, no pet.) (mem. op.) (Martinez, J., dissenting) ("The law sets a high evidentiary bar for termination of parental rights. We do not alleviate the plight of Texas foster children by lowering that bar and perpetuating diminished judicial expectations of the proof that must be presented by the Department.") (quoting *In re B.D.A.*, 546 S.W.3d 346, 392 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (Massengale, J., dissenting on reh'g)); *In re D.B.T.*, No. 04-14-00919-CV, 2015 WL 1939072, at *4 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.) (reversing because "State presented no evidence about [father]'s parenting skills that would make his failure to complete a parenting course probative of [child]'s best interest."); *In re J.A.J.*, No. 04-14-00684-CV, 2014 WL 7444340, at *3 (Tex. App.—San Antonio Dec. 31, 2014, no pet.) (mem. op.) ("[W]e may exercise our broad discretion to remand for a new trial in the interest of justice when there is a probability that a case has not been fully developed for any reason."); *In re D.M.*, 452 S.W.3d 462, 475 (Tex. App.—San Antonio 2014, no pet.) (Martinez, J., dissenting) ("We are duty bound to carefully scrutinize termination proceedings and must strictly construe involuntary termination statutes in favor of the parent."); *In re U.B.*, No. 04-12-00687-CV, 2013 WL 441890, at *2 (Tex. App.—San Antonio Feb. 6, 2013, no pet.) (mem. op.) (finding the evidence legally insufficient to support the termination order but remanding the cause for a new trial in the interest of justice under TEX. R. APP. P. 43.3(b)); *In re A.Q.W.*, 395 S.W.3d 285, 290–91 (Tex. App.—San Antonio 2013, no pet.) (finding the evidence legally insufficient because the record did not support the State's argument that father had been jailed repeatedly or been in and out of drug treatment). Notably, all these cases were tried in Bexar County.

best interest of the child." *Id*. (citing TEX. FAM. CODE ANN. § 161.001(b)). "The best interest of the child requires that the issues be as fully developed as possible." *Id*.

### This Record Is Not "As Fully Developed As Possible"

It cannot be said that this record is "as fully developed as possible." The entire reporter's record of the trial which led to the termination of the rights of both G.M.'s parents is barely 61 pages. Of those 61 pages, fewer than 40 pages contain the evidence the Department relied on to establish—by clear and convincing evidence—not only the grounds for termination of F.M.'s parental rights, but also that it is in G.M.'s best interest to permanently sever his relationship with his father.

There is a dispute over whether the video of F.M. hitting G.M. was actually admitted into evidence. Because the video was not actually admitted on the record, I do not believe it is evidence we can consider in our appellate review, even though it was improperly included in the reporter's record. *See, e.g., Parex Res., Inc. v. ERG Res., LLC*, 427 S.W.3d 407, 419 (Tex. App.—Houston [14th Dist.] 2014, pet. granted), *aff'd in part, sub nom, Searcy v. Parex Res., Inc.*, 496 S.W.3d 58 (Tex. 2016) ("[W]e will not consider any exhibits not expressly admitted by the trial court."); *Shah v. Star Anesthesia, P.A.*, No. 04-18-00465-CV, 2019 WL 2194544, at \*4 (Tex. App.—San Antonio May 22, 2019, no pet. h.) ("Our duty, as an appellate court, is to consider only the testimony adduced and the evidence tendered and/or admitted at the time of trial.").

The trial court also announced that it took judicial notice of "[p]leadings, service of process documents, the service plans, the court orders, [and] CASA reports . . . ." A trial court may take judicial notice of its own records in matters that are generally known, easily proven, and not reasonably disputed. *In re E.F.*, 2019 WL 2194539, at \*1 n.3. A court may, for example, take judicial notice that a pleading has been filed, of its own orders, or that it signed an order adopting

a service plan and the plan's requirements. *Id.* It may not, however, take judicial notice of allegations contained in such documents and those allegations cannot be used to support a termination order—that is, a court may not take judicial notice of the *truth* of those allegations. *Id*. at *8. Thus, in our sufficiency review, we will not consider allegations in the documents the trial court judicially noticed. *Id.* So, even though the trial court took judicial notice of the CASA reports and service plans, the allegations contained in those reports and service plans cannot support the termination order. *In re B.R.*, 456 S.W.3d 612, 617 n.4 (Tex. App.—San Antonio 2015, no pet.). As a consequence, we are limited to reviewing only the testimony and exhibits admitted at the termination hearing. *Id*.

We recognize that the trial court held many hearings before the date of trial. In fact, the record indicates that it held a permanency hearing the day before this trial. At that hearing, F.M. apparently provided testimony and was cross-examined by the Department. At trial, F.M. testified that he remembered that questioning. It is understandable that the parties and trial court would have also remembered that evidence. But *this court* has no record of that proceeding. I emphasize again that none of the previous hearings constitute evidence that can support this order—the only evidence that can support the trial court's order terminating F.M.'s parental rights is the evidence admitted at trial. *In re E.F.*, 2019 WL 2194539, at *1 n.4.

## Application

The Department bore the burden of proof at trial. TEX. FAM. CODE § 161.001(b). As is relevant to F.M.'s claims on appeal, the Department's burden was to prove by clear and convincing evidence that termination of F.M.'s parental rights was in G.M.'s best interests. *See id*. Although the record is paltry, I cannot say that a reasonable factfinder could not form a firm belief or

conviction that termination of F.M.'s parental rights is not in G.M.'s best interests based on the evidence detailed in the majority opinion, even excluding the video from my analysis.

I am frustrated by this outcome.  I am frustrated by the fact that the parties were aware of—and the trial court was likely persuaded by—information that is not contained in our appellate record.  But after reviewing this record and deferring to the trial court's credibility determinations, I cannot say that the evidence is legally and factually insufficient to support the trial court's termination order.

## Conclusion

I am mindful of the extraordinary burdens placed on all participants in this system.  *In re E.F.*, 2019 WL 2194539, at *1 n.4. But given the constitutional rights of the parents in these proceedings, the future placement of the children involved, and the effect such placement will have on their lives, I urge the trial court and the parties to more completely develop the evidence at trial, so the appellate record is commensurate with the finality of parental termination.  *Id.*  I write this concurring opinion to express my dissatisfaction with the fact that I am asked to review an order that completely, finally, and irrevocably divests for all time F.M.'s fundamental constitutional right to parent his own child when the parties and the trial court "know" so much more about the evidence in this case than I do.

Beth Watkins, Justice